Filed 9/13/23 Modified and Certified for Pub. 10/6/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

HISTORIC ARCHITECTURE
ALLIANCE et al.,

    Plaintiffs and Appellants,

      v.

CITY OF LAGUNA BEACH et al.,

    Defendants and Respondents,

IAN AND CHERLIN KIRBY,

    Real Parties in Interest and
Respondents.

G061671

(Super. Ct. No. 30-2021-01182450)

O P I N I O N

Appeal from a judgment of the Superior Court of Orange County, Randall J. Sherman, Judge.  Affirmed.

Chatten-Brown, Carstens & Minteer LLP, Amy Minteer, Michelle N. Black, and Sunjana Supekar for Plaintiffs and Appellants Historic Architecture Alliance and Laguna Beach Historic Preservation Coalition.

Rutan & Tucker and Philip D. Kohn for Defendants and Respondents City of Laguna Beach and City Council of the City of Laguna Beach.

Nokes & Quinn, LLP and Laurence P. Nokes for Real Parties in Interest and Respondents Ian and Cherlin Kirby.

\* \* \*

The Historic Architecture Alliance and the Laguna Beach Historic Preservation Coalition (collectively, the Alliance) appeal from a judgment denying their petition for a writ of mandamus. The action involves a decision by the City of Laguna Beach and its City Council (collectively, the City) to approve real parties in interest Ian Kirby and Cherlin Kirby's (the Kirbys) application to renovate and build an extension on an existing single-family dwelling listed in the City's "Historic Resources Inventory." Because of this listing, the Kirbys' residence is considered a presumptive historical resource under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.).[1]

"Historic resources are accorded special protection under CEQA, and the state must 'take all action necessary to protect, rehabilitate, and enhance the environmental quality of the state' including the protection and rehabilitation of 'objects of historic or aesthetic significance.'" (*Citizens for a Sustainable Treasure Island v. City and County of San Francisco* (2014) 227 Cal.App.4th 1036, 1065 (*Treasure Island*).) "'A project that may cause a substantial adverse change in the significance of an historical resource is a project that may have a significant effect on the environment[]'" and "[s]uch a project would require the preparation of an environmental impact report (EIR) or a mitigated negative declaration." (*Valley Advocates v. City of Fresno* (2008) 160 Cal.App.4th 1039, 1051 (*Valley Advocates*).)

---

[1] All further statutory references are to the Public Resources Code unless otherwise specified.

2

CEQA and the guidelines adopted to implement it (Cal. Code Regs., tit. 14, § 15000 et seq. (CEQA Guidelines)) allow certain exemptions from CEQA's environmental review requirements. Here, the City found the proposed modification to the Kirbys' property (the project) was categorically exempt from CEQA's environmental review under the "Class 31" historical resource exemption. (CEQA Guidelines, § 15331.) This exemption is based on the City's factual finding the project is consistent with the "Secretary of the Interior's Standards for the Treatment of Historic Properties" (the Secretary's Standards), which has guidelines for rehabilitating historic buildings. (*Ibid.*) The City made this finding despite evidence and argument from the Alliance and others that the project does not comply with the Secretary's Standards.

Once it has been determined a project meets the requirements of a categorical exemption, such as the historical resource exemption, "a party challenging the exemption has the burden of producing evidence supporting an exception." (*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1105 (*Berkeley Hillside*).) The Alliance asserts the showing it made before the City was sufficient to support the historical resource exception, which states: "A categorical exemption shall not be used for a project which may cause a substantial adverse change in the significance of a historical resource." (CEQA Guidelines, § 15300.2, subd. (f).)[2] The Alliance contends the fair argument standard governs the agency's determination of whether the historical resource exception applies and the evidence it presented to the City provided a fair argument the project does not comply with the Secretary's Standards. The Alliance asserts the project therefore causes a substantial adverse change in the

---

[2] CEQA and its guidelines are inconsistent in their use of the indefinite article preceding the term "historical resource." (Compare § 21084, subd. (e) ["a historical resource"] with § 21084.1 ["an historical resource"] and CEQA Guidelines, § 15300.2, subd. (f) ["a historical resource"] with CEQA Guidelines, § 15064.5, subd. (b) ["an historical resource"].) Except when quoting from a statute or case law, we will use "a" rather than "an" as the indefinite article preceding the term "historical resource."

significance of a historical resource and preparation of an EIR or a mitigated negative declaration is required.

We conclude substantial evidence supports the City's finding the project was exempt under the historical resource exemption because it was consistent with the Secretary's Standards.  We further conclude the fair argument standard does not apply where application of the historical resource exemption and the historical resource exception depend on the same issue—whether the project complies with the Secretary's Standards.  We affirm the judgment.


FACTUAL AND PROCEDURAL BACKGROUND

I.

THE HOUSE'S HISTORY PRIOR TO THE KIRBYS' PURCHASE

The house, built in 1925, is a two-story Colonial Revival style single-family residence (1,940 square feet) with a partial basement (479 square feet).  The residence is described as having "a rectangular plan and a side-gable roof with boxed eaves.  The windows and doors are symmetrically placed on the west, north, and south fa[ç]ades.  There is a one-story projection with a flat roof and stepped wood parapet on the east façade at [the] rear of the parcel.  The entire house is clad with wood shingle siding; the shingles on the north façade have been painted.  The fenestration consists of six-over-six double-hung wood sash windows, divided-light glazed doors, divided-light wood sash basement windows (glazed and screened), and divided-light wood sash fixed and casement windows.  All windows have flat wood trim with projecting sills.  There is an exterior brick chimney prominently placed on the street-facing (west) façade, and a wood porch with square wood posts supporting an upper deck that spans this fa[ç]ade.  The main entry, with a single wood paneled door, is on the south (primary) façade and is reached by a raised wood porch with square wood posts supporting a flat roof.  There is a

4

secondary entry, with a partially glazed wood door, on the north façade reached by [a] raised wood stoop."

The City does not have the original building permit for the house, but maps from 1930 and 1948 show its footprint was the same then as it appears today, including the porches and the one-story projection at the rear of the house. The basement is believed to be a later addition.

In 1981, the neighborhood in which the house is located was surveyed and the house was identified as a potential heritage property. The property was considered eligible for inclusion in the City's historical register either as an individual resource or a contributor to a historical district.

In 2014, the City's Heritage Committee approved an application to place the house on the City's historical register as an individual resource. The application stated the house's distinctive features were its gabled roof, shingled siding, and brick chimney; it did not identify the one-story projection and its stepped wood parapet as distinctive features. The house was listed on the City's historical register "with a 'K' . . . rating," which is used for buildings that "strongly maintain their original integrity and demonstrate a particular architectural style or time period."

II.

THE KIRBYS' PROPOSED PROJECT

The Kirbys purchased the property in 2017. That year, they submitted their initial application and plans to the City for the remodel of the existing two-story structure and for a two-story addition with an attached garage at the rear of the property (the 2017 project). These additions required the removal of the one-story projection at the rear of the house. A portion of the north exterior wall would also be removed, as well as two replacement windows and a door on the north façade. The plans for the 2017 project also required altering the location of two original windows on the north façade second floor,

5

adding one window on the north façade, and removing two original attic openings and two original windows from the east façade. "The new addition [would] wrap around the existing house at the northeast corner of the first floor and extend beyond the width of the original house on the north and south fa[ç]ades." The cladding on the new addition was designed to match the house's existing shingle cladding, and the new windows would match the existing ones. The addition's roof would have a lower pitch and be lower in height than the roof on the existing portion of the home. The 2017 project also provided for new landscaping, hardscaping, and the addition of a pool on the property.

City staff met with the Kirbys and their architect to review the project. As part of the review process, an assessment of the 2017 project was conducted by the City's consultant Historic Resources Group (HRG). In 2018, HRG issued its report, which analyzed the project's potential impacts according to the Secretary's Standards. HRG's report explained: "The [Secretary's] Standards provide guidance for reviewing proposed projects that may affect historic resources. The intent of the [Secretary's] Standards is to assist the long-term preservation of a property's significance through the preservation, rehabilitation, and maintenance of historic materials and features. The [Secretary's] Standards pertain to historic buildings of all materials, construction types, sizes, and occupancy and encompass the exterior and interior of the buildings."

The HRG report concluded the 2017 project met Secretary's Standards 1, 4, 6, 7, and 8 but did not meet standards 2, 3, 5, 9, and 10. HRG's report also provided guidance and recommendations to help the Kirbys and their architect design a more compatible project. It explained: "There is no formula or prescription for designing a new addition that meets the [Secretary's] Standards. A new addition to a historic building that meets the [Secretary's] Standards can be any architectural style — traditional, contemporary or a simplified version of the historic building. However, there must be a balance between differentiation and compatibility in order to maintain the historic character and the identity of the building being enlarged. New additions that too

6

closely resemble the historic building or are in extreme contrast to it fall short of this balance. Inherent in all of the guidance is the concept that an addition needs to be subordinate to the historic building."

One project specific recommendation HRG made was to "[m]inimize the degree of material loss by retaining the one-story extension." Another recommendation was: "The new addition should not wrap around the existing house, and it should be visually distinguishable and not compete in size, scale, or design. Reduce the size and scale of the addition so it is compatible with, and subordinate to, the original house per [National Park Service Technical] Preservation Brief 14. The original design and form of the house must remain clearly identifiable." A third recommendation was: "Retain as many original features as possible including original windows and doors in original locations. The symmetrical window placement is important to the overall integrity and architectural design of this house and should be retained." Additional recommendations were made concerning the exterior siding and the windows.

The Kirbys and their architect revised their plans. In January 2019, they presented their project to the City's Heritage Committee,[3] which recommended the City's Design Review Board approve the project with two alterations: (1) the new windows be further differentiated from the original windows; and (2) the proposed wrap around on the northeast elevation be reduced so the existing window could remain.

For several months in 2019, the City's staff, which included Jennifer Gates, a qualified historical preservation professional, worked with the Kirbys and their architect to conform the project to the Secretary's Standards and to address the recommendations of HRG and the City's Heritage Committee. During this process, the addition to the house was reduced from 1,304 square feet to 1,020 square feet. The revised project,

_____

[3] The City's Heritage Committee serves in an advisory role on matters pertaining to historic preservation as specified in the Laguna Beach Municipal Code. (Laguna Beach Mun. Code, § 25.45.004.)

7

however, still called for the removal of the one-story projection at the rear and the construction of a two-story addition in its place with an attached garage.

As they were revising their plans, the Kirbys learned next-door neighbor Dennis Sundman was concerned the proposed project would negatively impact his property, i.e., his privacy, intrusion on the light and air to his property, and his view. In an effort to address Sundman's concerns, the Kirbys reduced the size of the second-story addition and made further design changes.

When the revised project was submitted to the City's Design Review Board in September 2020, the City's staff prepared a report recommending approval of the revised project and adoption of CEQA's Class 31 historical resource exemption. The report stated the Secretary's Standards had been used to analyze the project and "the project was found to be in compliance." It further indicated no exception to the categorical exemption applied. Addressing historical preservation, the staff report stated: "The proposed addition does not diminish or detract from the historic significance of the structure as it complies with the [Secretary's Standards] for Rehabilitation, and the addition is compatible in scale and character with the surrounding neighborhood." HRG's report evaluating the 2017 project was included with the staff's report.

Several members of the City's Design Review Board visited the property and spoke to the Kirbys and Sundman prior to the board's public hearing. At the hearing, Sundman and Dr. Catherine Jurca, a consultant to Sundman, spoke in opposition to the project. Members of the Design Review Board, the City's staff, and Jurca discussed the Secretary's Standards and whether the project was in compliance. The Design Review Board found the project met the Secretary's Standards and qualified for a Class 31 historical resource exemption. The project was approved (four votes to one) with conditions concerning the second-story windows on the north side of the addition and the addition's exterior paint color.

8

Sundman appealed the Design Review Board's decision to the City Council, asserting, among other claims, the board's approval of the project violated CEQA. Sundman asserted the Design Review Board improperly relied on the historical resource exemption because the "project would cause a substantial adverse change in the significance of a historic resource, which is considered a significant effect on the environment."

Prior to the City Council's public hearing on the matter, several neighbors wrote to the council expressing their support for the project. However, the Laguna Beach Historic Preservation Coalition submitted a letter, written by Jurca, in opposition. In the letter, Jurca contended the City's staff "erroneously claimed" the project conformed to the Secretary's Standards "to justify the categorical exemption." Relying on the HRG report and her own analysis, she asserted there was "substantial evidence to support a fair argument that the project is not categorically exempt from CEQA and an Initial Study must be prepared."

The City's staff prepared a report for the City Council, recommending the council deny the appeal and sustain the Design Review Board's approval of the historical resource exemption for the project. At the public hearing held in December 2020, the City Council heard comments from individuals in favor of the project as well as those in opposition. At the City Council's request, the City's staff addressed how the 2017 project had been revised to comply with the five previously unmet Secretary's Standards identified in the HRG report. After analyzing the project's compliance with the Secretary's Standards, the City Council unanimously denied the appeal.

III.

PETITION FOR WRIT OF MANDAMUS IN THE TRIAL COURT

In February 2021, the Historic Architecture Alliance and the Laguna Beach Historic Preservation Coalition jointly filed a petition for writ of mandamus in the trial

court under Public Resources Code section 21168 and Code of Civil Procedure section 1094.5.  In the petition, the Historic Architecture Alliance described itself as "an unincorporated association formed in the public interest following the city's approvals of the expansive project at" issue here and identified Sundman as a member.  The Laguna Beach Historic Preservation Coalition was described in the petition as "an unincorporated association formed in the public interest prior to 2020," whose members "enjoy and appreciate the city's historic resources" and "objected to the city's approvals of the . . . project."  Together, they argued the City abused its discretion and failed to act in the manner required by law in approving the Kirbys' project based on a categorical exemption under CEQA.  They asserted the City's decision was not supported by substantial evidence the project met the requirements for a historical resource exemption and the exemption was barred by the historical resource exception because there was a fair argument the project would result in a substantial adverse change in the significance of a historical resource.

In 2022, the trial court denied the petition.  It concluded the administrative record contained substantial evidence supporting the City's decision the project qualified for a historical resource exemption (CEQA Guidelines, § 15331) and the Alliance had not carried their burden of showing an exception applied.  After judgment was entered in favor of the City and the Kirbys, the Alliance appealed.

## DISCUSSION

### I.

### THE CEQA REVIEW PROCESS

"'CEQA is a comprehensive scheme designed to provide long-term protection to the environment.'  [Citation.]  It applies to 'discretionary projects proposed to be carried out or approved by public agencies.'  [Citation.]  'In enacting CEQA, the Legislature declared its intention that all public agencies responsible for regulating

10

activities affecting the environment give prime consideration to preventing environmental damage when carrying out their duties. [Citations.] CEQA is to be interpreted "to afford the fullest possible protection to the environment within the reasonable scope of the statutory language."'" (*Protect Tustin Ranch v. City of Tustin* (2021) 70 Cal.App.5th 951, 958 (*Protect Tustin Ranch*).)

CEQA and the CEQA Guidelines provide three fundamental steps or tiers in the review process. (*Protect Tustin Ranch, supra*, 70 Cal.App.5th at p. 959.) "'"The first step is jurisdictional and requires a public agency to determine whether a proposed activity is a 'project.'"'" (*Ibid.*) Here, there is no dispute the Kirbys' remodel and expansion of their house listed on the City's historical registry qualifies as a project under CEQA.[4] The issues in this appeal concern the second step of the review process.

At the second step, "the agency must next decide whether the project is exempt from the CEQA review process under either a statutory exemption [citation] or a categorical exemption set forth in the CEQA Guidelines [citations]." (*California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 382; accord, *Protect Tustin Ranch, supra*, 70 Cal.App.5th at p. 959.) There are 33 categorical exemptions listed in the CEQA Guidelines. (CEQA Guidelines, §§ 15301–15333.) These are "classes of projects" the Secretary of the Natural Resources Agency has determined "do not have a significant effect on the environment" (Pub. Resources Code, § 21084, subd. (a)) and are therefore "categorically exempt" from CEQA's provisions (CEQA Guidelines, § 15300). "In listing a class of projects as exempt, the Secretary has determined that the environmental changes typically associated

---

[4] CEQA defines a "'project'" as "an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and which is any of the following: [¶] . . . [¶] (c) An activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (§ 21065.) The Kirbys' remodel and expansion of their house requires the issuance of permits by the City.

with projects in that class are not significant effects within the meaning of CEQA, even though an argument might be made that they are potentially significant." (*Berkeley Hillside, supra*, 60 Cal.4th at pp. 1104–1105.) At issue in this case is the historical resource categorical exemption. (CEQA Guidelines, § 15331.)

"Unlike statutory exceptions, categorical exemptions such as the [historical resource] exemption are subject to exceptions enumerated in [CEQA] Guidelines section 15300.2. [Citation.] An agency may not apply a categorical exemption without considering whether it is foreclosed by an exception." (*World Business Academy v. State Lands Com.* (2018) 24 Cal.App.5th 476, 491 (*World Business Academy*).) "If the agency establishes the project is within an exempt class, the burden shifts to the party challenging the exemption to show that it falls into one of the exceptions." (*Committee to Save the Hollywoodland Specific Plan v. City of Los Angeles* (2008) 161 Cal.App.4th 1168, 1186; accord, *Berkeley Hillside, supra*, 60 Cal.4th at p. 1105.) In this matter, the Alliance asserts it carried its burden of establishing the historical resource exception applied and therefore the project was not exempt from CEQA's requirements.

"'"If a project is categorically exempt and does not fall within an exception, '"it is not subject to CEQA requirements and 'may be implemented without any CEQA compliance whatsoever.'"'"'" (*Protect Tustin Ranch, supra*, 70 Cal.App.5th at p. 959.) "The agency need only prepare and file a notice of exemption [citations], citing the relevant statute or section of the CEQA Guidelines and including a brief statement of reasons to support the finding of exemption [citation]." (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 380.)

The City in this matter filed a notice of exemption after concluding the Kirbys' project was categorically exempt from CEQA requirements under the historical resource exemption. The City, therefore, did not reach step three of the CEQA review process, which would have required the City to "decide whether the project may have a significant effect on the environment" and prepare "a negative declaration, a mitigated

12

negative declaration or an environmental impact report." (*Protect Tustin Ranch, supra*, 70 Cal.App.5th at p. 959.)

"'[In] an appeal challenging a trial court's denial of a petition for a writ of mandate in a CEQA case, our task is the same as the trial court's. [Citation.] We conduct our review of the agency's action independently of the trial court's findings. [Citation.] Accordingly, in this appeal we review [the] City's decision and not the trial court's.'" (*Protect Tustin Ranch, supra*, 70 Cal.App.5th at p. 959.)

II.

HISTORICAL RESOURCE EXEMPTION

Because the Kirbys' house is included in the City's register of historical resources, it is considered a presumptive historical resource under CEQA. (§ 21084.1; CEQA Guidelines, § 15064.5, subd. (a)(2).)[5] As a presumptive historical resource, a project involving it is subject to CEQA's requirements unless the City, as the lead agency, concludes the project is exempt and if categorically exempt, an exception does not bar its application. (CEQA Guidelines, § 15061, subds. (a), (b).)

The City determined the Kirbys' project was categorically exempt from CEQA under the Class 31 exemption for a historical resource. This exemption states: "Class 31 consists of projects limited to maintenance, repair, stabilization, rehabilitation, restoration, preservation, conservation or reconstruction of historical resources in a manner consistent with the Secretary of the Interior's Standards for the Treatment of Historic Properties with Guidelines for Preserving, Rehabilitating, Restoring, and Reconstructing Historic Buildings (1995), Weeks and Grimmer." (CEQA Guidelines,

---

[5] A structure's status as a historical resource for purposes of CEQA is either mandatory, presumptive, or discretionary, depending on whether it has been or could be listed on various registers of historical resources. (*Valley Advocates, supra*, 160 Cal.App.4th at pp. 1051–1052, 1054, 1058–1059.)

13

§ 15331.)  This means a project involving the rehabilitation of a historical resource is categorically exempt from CEQA if the project is consistent with the Secretary's Standards and application of the exemption is not barred by an exception.  (CEQA Guidelines, §§ 15061, subd. (b)(2), 15331.)  By creating this exemption, the Secretary of California's Natural Resources Agency has declared projects involving the remodel of historical resources in a manner consistent with the standards promulgated by the Secretary of the United States Department of the Interior do not have a significant effect on the environment and are exempt from CEQA.  (Pub. Resources Code, § 21084, subd. (a); CEQA Guidelines, § 15331.)

III.

HISTORICAL RESOURCE EXCEPTION

The historical resource exception bars application of a categorical exemption if the project "may cause a substantial adverse change in the significance of a historical resource, as specified in Section 21084.1 . . . ."  (§ 21084, subd. (e); accord, CEQA Guidelines, § 15300.2, subd. (f).)  Public Resources Code section 21084.1 states:  "A project that may cause a substantial adverse change in the significance of an historical resource is a project that may have a significant effect on the environment."

This is reiterated and further explained in CEQA Guidelines section 15064.5, subdivision (b), which defines a "[s]ubstantial adverse change in the significance of an historical resource" as the "physical demolition, destruction, relocation, or alteration of the resource or its immediate surroundings such that the significance of an historical resource would be materially impaired."  (*Id.*, subd. (b)(1).)  CEQA Guidelines section 15064.5, subdivision (b)(2) describes what constitutes a material impairment of a historical resource.  It explains, in relevant part:  "The significance of an historical resource is materially impaired when a project:  [¶] . . . [¶] (B) Demolishes or materially alters in an adverse manner those physical characteristics

14

that account for its inclusion in a local register of historical resources . . . or its identification in an historical resources survey . . . ."  As succinctly stated in one treatise: "The significance of a resource is materially impaired when the physical characteristics that convey its historical significance and that justify its designation as a historical resource are demolished or materially altered in an adverse manner."  (2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2023) § 20.99(D), p. 20-137.)

CEQA Guidelines section 15064.5, subdivision (b)(3) offers agencies further guidance on determining whether a project has a significant impact on a historical resource.  It states:  "Generally, a project that follows the Secretary of the Interior's Standards for the Treatment of Historic Properties with Guidelines for Preserving, Rehabilitating, Restoring, and Reconstructing Historic Buildings or the Secretary of the Interior's Standards for Rehabilitation and Guidelines for Rehabilitating Historic Buildings (1995), Weeks and Grimmer, *shall be considered as mitigated to a level of less than a significant impact on the historical resource*."  (Italics added; accord, CEQA Guidelines, § 15126.4, subd. (b)(1).)  This means if the Secretary's Standards are followed, then generally the project does not have a significant impact on the historical resource and the exception does not apply.

CEQA Guidelines section 15064.5, subdivision (b)(4) requires a lead agency to "identify potentially feasible measures to mitigate significant adverse changes in the significance of an historical resource" and "ensure that any adopted measures to mitigate or avoid significant adverse changes are fully enforceable through permit conditions, agreements, or other measures."

## IV.

### THE SECRETARY'S STANDARDS IN THE HISTORICAL RESOURCE EXEMPTION AND THE HISTORICAL RESOURCE EXCEPTION

For both the historical resource exemption and the historical resource exception, conformity with the Secretary's Standards is consequential. If a project involving a historical resource is consistent with the Secretary's Standards, the project is exempt from CEQA under the historical resource exemption (CEQA Guidelines, § 15331) and "shall be considered as mitigated" to have "less than a significant impact on the historical resource" (*id.*, § 15064.5, subd. (b)(3)), so that the historical resource exception does not bar the exemption.

"The Secretary's Standards are the benchmark that CEQA uses to establish whether a project will have a significant adverse impact on a historical property." (*Treasure Island, supra*, 227 Cal.App.4th at p. 1066.) If the Secretary's Standards are followed, then under the CEQA Guidelines, any impact to the historical resource "that might otherwise be regarded as adverse will be considered to have been mitigated to insignificant levels." (*Treasure Island, supra*, at p. 1066.)

An agency's finding a project comes within the historical resource exemption necessarily includes the finding the project complies with the Secretary's Standards. It also includes an implied finding the project does not have a significant impact on the environment. (CEQA Guidelines, § 15064.5, subd. (b)(3); *World Business Academy, supra*, 24 Cal.App.5th at p. 496 ["'[A]n agency's finding that a particular proposed project comes within one of the exempt classes necessarily includes an implied finding that the project has no significant effect on the environment'"].)

16

## V.

## THE HISTORICAL RESOURCE EXEMPTION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

"'A public agency's "determination that [a particular] project [is] exempt from compliance with CEQA requirements . . . is subject to judicial review under the abuse of discretion standard in . . . section 21168.5. [Citations.] . . . Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence."'" (*Protect Tustin Ranch, supra*, 70 Cal.App.5th at p. 960.) "Judicial review of these two types of error differs significantly: While we determine de novo whether the agency has employed the correct procedures, scrupulously enforcing all legislatively mandated CEQA requirements, we accord greater deference to the agency's substantive factual conclusions." (*Treasure Island, supra*, 227 Cal.App.4th at p. 1045.)

"'[W]here[, as here,] a public agency makes a factual determination that a project falls within a . . . categorical exemption, we apply the substantial evidence standard in reviewing the agency's finding.'" (*Protect Tustin Ranch, supra*, 70 Cal.App.5th at p. 960.) "Under this deferential standard of review, our role is different from the agency's. [Citation.] The agency must weigh the evidence before it and make a finding based upon the weight of the competing evidence. As a reviewing court, we do not reweigh the evidence. Instead, we 'must affirm [the agency's] finding if there is any substantial evidence, contradicted or uncontradicted, to support it.' [Citation.] We 'resolv[e] all evidentiary conflicts in the agency's favor and indulg[e] . . . all legitimate and reasonable inferences to uphold the agency's finding . . . .'" (*World Business Academy, supra*, 24 Cal.App.5th at pp. 498–499.) If the administrative record "contains evidence of ponderable legal significance that is reasonable in nature, credible, and of solid value, to support the agency's decision," we must affirm. (*Protect Tustin Ranch, supra*, 70 Cal.App.5th at p. 960.)

17

Here, there is substantial evidence in the administrative record supporting the City's factual determination the Kirbys' project is consistent with the Secretary's Standards and falls within the historical resource exemption. The administrative record shows the project was subjected to a rigorous development cycle and numerous revisions were made to the proposed plans. When the initial plans were reviewed by HRG, it concluded the project met standards 1, 4, 6, 7, and 8 of the Secretary's Standards but did not meet standards 2, 3, 5, 9, and 10. HRG made recommendations to assist the Kirbys in designing an addition that would meet the Secretary's Standards. The Kirbys revised their plans, and their plans were submitted to the City's Heritage Committee for review. The Heritage Committee recommended approval of the project with two modifications, which included additional differentiation of the new windows and reduction of the proposed wraparound on the northeast elevation for an existing window to remain. The City's staff worked with the Kirbys and their architect to conform the project to the Secretary's Standards and to address the recommendations from HRG and the Heritage Committee. After Sundman expressed concerns about the impact the project would have on his neighboring property, the Kirbys made further design changes to decrease the size of their addition.

The City's staff concluded the revised project qualified for a historical resource exemption under CEQA because it conformed to the Secretary's Standards and an exception to the exemption did not apply. At the hearing before the City's Design Review Board, Sundman and Jurca spoke in opposition of the project. Jurca asserted the project did not meet the Secretary's Standards and the City's staff had not provided an evaluation demonstrating it did. Members of the Design Review Board questioned the City's staff concerning compliance with the Secretary's Standards. The City's staff reviewed the Secretary's Standards discussed in the HRG report and explained the changes made to the project after the HRG report to comply with the Secretary's Standards. After staff addressed how the project had been revised to meet the previously

18

unsatisfied Secretary's Standards, the Design Review Board found the project met the Secretary's Standards and qualified for a historical resource categorical exemption. The Design Review Board approved the project with conditions concerning some of the windows on the addition's second story and changing the addition's exterior color.

After Sundman appealed the Design Review Board's approval of the project, the City Council considered the matter at a public hearing. The City's staff again explained how the revised plans for the project complied with the Secretary's Standards that were unmet at the time of the HRG report. Opposing viewpoints were presented by Jurca and Francesca Smith, an architectural historian. Jurca asserted the finding the project met the Secretary's Standards was not supported by substantial evidence. Smith similarly asserted the project did not comply with the Secretary's Standards. After considering these comments, the staff's analysis, and the Design Review Board's findings, the City Council found the project complied with the Secretary's Standards. The City Council unanimously denied the appeal and sustained the Design Review Board's decision to approve the project and adopt a historical resource exemption under CEQA.

Under the substantial evidence standard, it is the agency's role to weigh conflicting evidence and not ours. (*Protect Tustin Ranch, supra*, 70 Cal.App.5th at p. 960.) Thus, we accept the City's finding the evidence of compliance with the Secretary's Standards was weightier than the opposing views.

VI.

THE ALLIANCE'S RELIANCE ON THE FAIR ARGUMENT STANDARD

FOR THE HISTORICAL RESOURCE EXCEPTION

The Alliance asserts the City should have applied the fair argument standard to determine whether the historical resource exception barred reliance on the historical resource exemption and further asserts it satisfied this standard. The Alliance

19

contends the historical resource exception includes two different determinations. The first is whether the project involves a CEQA-defined historical resource. As there is no dispute the Kirbys' project involved such, the Alliance focuses on the second determination. The Alliance argues the second determination "is whether the Project *may* have an adverse impact on this historic resource," and the Alliance asserts the fair argument standard applies to this issue. We conclude in the particular context of this case, where the decisive factor for the historical resource exception is the same as that for the historical resource exemption—whether the project complies with the Secretary's Standards—the Alliance's reliance on the fair argument standard is misplaced.

Under the fair argument standard, """"an agency is merely supposed to look to see if the record shows substantial evidence of a fair argument that there may be a significant effect. [Citations.] In other words, the agency is not to weigh the evidence to come to its own conclusion about whether there will be a significant effect.'" [Citation.] An agency must find a 'fair argument' if there is any substantial evidence to support that conclusion, even if there is competing substantial evidence in the record that the project will not have a significant environmental effect." (*World Business Academy, supra*, 24 Cal.App.5th at p. 499.) "The fair argument standard creates a low threshold favoring future environmental review and differs markedly from the deferential substantial evidence standard of review normally enjoyed by agencies." (*Treasure Island, supra*, 227 Cal.App.4th at p. 1049.)

The Alliance asserts it cleared this low threshold for the historical resource exception with the evidence before the City from its experts Jurca and Smith and the HRG report, all of whom concluded the project at various stages did not comply with the Secretary's Standards.

The Alliance's argument the fair argument standard applies comes from two cases addressing issues different than the one before us, which state, in dicta, the fair argument standard applies to a facet of the historical resource exception. In the first case,

20

*Valley Advocates*, the Court of Appeal held the fair argument standard does not apply to the question of whether a building is a historical resource under CEQA. (*Valley Advocates, supra*, 160 Cal.App.4th at pp. 1046, 1072.) Although unnecessary for the issues before it, the appellate court remarked, "once the resource has been determined to be an historical resource, then the fair argument standard applies to the question whether the proposed project 'may cause a substantial adverse change in the significance of an historical resource' [citation] and thereby have a significant effect on the environment." (*Id.* at p. 1072.)

In the second case, *Berkeley Hillside*, the California Supreme Court quoted this portion of *Valley Advocates* when addressing the standard of review to be applied to an agency's determination concerning the unusual circumstances exception. (*Berkeley Hillside, supra*, 60 Cal.4th at pp. 1110, 1117.) The Supreme Court concluded two different standards apply under the unusual circumstances exception where the issues are: (1) whether a project presents circumstances that are unusual for projects in an exempt class, and (2) whether there is "a reasonable possibility of a significant effect due to that unusual circumstance." (*Id.* at p. 1105.) As to the first issue, "a reviewing court should apply the traditional substantial evidence standard." (*Id.* at p. 1114.) As to the second issue, the agency applies the fair argument standard and the reviewing court "'determine[s] whether substantial evidence support[s] the agency's conclusion as to whether the prescribed "fair argument" could be made.'" (*Id.* at p. 1115.) It was in this context the Supreme Court used "*Valley Advocates* to support its conclusion that a bifurcated standard could apply where one part of the agency's decision was subjected to the substantial evidence standard and another part to the fair argument standard." (*Friends of Willow Glen Trestle v. City of San Jose* (2016) 2 Cal.App.5th 457, 465–466.)

But neither *Berkeley Hillside* nor *Valley Advocates* was addressing the issue before us—does the fair argument standard apply to the agency's determination of whether a project complies with the Secretary's Standards for purposes of the historical

21

resource exception when the agency has found the project does comply with the Secretary's Standards for purposes of the historical resource exemption. We conclude the fair argument standard does not apply in this situation.

When the historical resource exemption is at issue, we apply the substantial evidence standard to the agency's determination of whether the project complies with the Secretary's Standards. Whether a particular project follows the Secretary's Standards, like the issue of "[w]hether a particular project presents circumstances that are unusual for projects in an exempt class[,] is an essentially factual inquiry." (*Berkeley Hillside, supra*, 60 Cal.4th at p. 1114.) "Accordingly, as to this question, the agency serves as 'the finder of fact' [citation], and a reviewing court should apply the traditional substantial evidence standard . . . ." (*Ibid.*)

When a party challenging the historical resource exemption asserts the historical resource exception applies because the project does not comply with the Secretary's Standards, there is no second inquiry to which the agency applies the fair argument standard. We do not disagree that two different standards of review may apply when there are two different determinations to be made, as addressed in *Valley Advocates* and *Berkeley Hillside*. But here, the single inquiry to be determined is whether the project complies with the Secretary's Standards. During this inquiry, the agency considers the evidence and argument of the opposing sides. If the agency finds the project follows the Secretary's Standards, the agency's finding establishes the project does not have a significant impact on the historical resource and the historical resource exception would not bar reliance on the historical resource exemption. (CEQA Guidelines, § 15064.5, subd. (b)(3).)

To establish the historical resource exception, it is not enough to merely make a fair argument the project did not comply with the Secretary's Standards. If this was all the challenger had to establish, the historical resource categorical exemption would be meaningless. (See *Berkeley Hillside, supra*, 60 Cal.4th at pp. 1104–1105

22

[discussing the unusual circumstances exception].)  It would prohibit the agency from weighing the conflicting evidence and making a finding based upon the weight of the competing evidence.

Here, the City considered the Alliance's evidence in evaluating whether the project complied with the Secretary's Standards, but the City nonetheless concluded the project was entitled to a historical resource exemption.  As we have discussed, the City's conclusion is supported by substantial evidence.  Thus, the record does not indicate the City abused its discretion in determining there was no exception to the historical resource exemption.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover their costs on appeal.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


DELANEY, J.

23

Filed 10/6/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HISTORIC ARCHITECTURE ALLIANCE et al., | G061671 |
| Plaintiffs and Appellants, | (Super. Ct. No. 30-2021-01182450) |
| v. | ORDER GRANTING PUBLICATION, MODIFYING OPINION, AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |
| CITY OF LAGUNA BEACH et al., | |
| Defendants and Respondents, | |
| IAN AND CHERLIN KIRBY, | |
| Real Parties in Interest and Respondents. | |

Requests that our opinion filed on September 13, 2023 in the above-entitled matter be certified for publication were filed by respondents the City of Laguna Beach and the Laguna Beach City Council, respondents Ian and Cherlin Kirby, and nonparties the California Building Industry Association, the Building Industry Association of the Bay Area, the California Business Properties Association, the League of California Cities, and the City of Glendale. It appears our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The requests are GRANTED. The opinion is ordered published in the Official Reports as modified in this order.

It is hereby ordered the opinion be modified as follows:

On page 12, the third word of the first sentence of the first full paragraph, "exceptions," is changed to "exemptions," so the sentence now reads:

"Unlike statutory exemptions, categorical exemptions such as the [historical resource] exemption are subject to exceptions enumerated in [CEQA] Guidelines section 15300.2.

On page 19, after the second full paragraph, which ends with "was weightier than the opposing views." add the following new paragraph:

The Alliance also contends the City erred by finding the project qualified for a historical resource exemption because the City had to impose mitigating conditions on the project "to shoehorn it into the categorical exemption." The Alliance asserts the changes made to the project's plans during its design development and review phase after the HRG report were mitigating conditions and the City failed to demonstrate the project met the requirements for a historical resource exemption prior to the imposition of these mitigating conditions. We agree with the legal principle the Alliance cites to support its contention—"[m]itigation measures may support a negative declaration but not a categorical exemption." (*Salmon Protection & Watershed Network v. County of Marin* (2004) 125 Cal.App.4th 1098, 1102.) But we reject their application of this principle to the facts of this case. Prior to the City's approval, revisions were made to the project's plans so the project was consistent with the Secretary's Standards; these revisions were not mitigation measures as used in the context of CEQA's mitigated negative declarations, negative declarations, or EIRs.

2

There is no change in the judgment.

The petition for rehearing filed by the Historic Architecture Alliance and the Laguna Beach Historic Preservation Coalition is DENIED.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


DELANEY, J.